The calendar today is 21-15485, Gonzalez v. Ahern. Okay, so there's three of you. I think you're sharing... Who's sharing time? Howell, please. It would be appellees, Your Honor. Okay, thank you. Good morning, Your Honor. Yolanda Huang appearing on behalf of plaintiffs and appellants. May it please the court, I wish to reserve five minutes for rebuttal at the end. This case is a straightforward case. On many of the pivotal issues, there are no factual dispute. There is no factual dispute that Santa Rita Jail has an opening in the walls which separate the commercial kitchen from the outside, and that opening is covered only with plastic sheets or plastic strips. These are attached only at the top. They're not attached at the side, and there's a significant gap between the bottom of this plastic and the floor. So think shower curtain. Because these plastic strips flap at the sides and has a significant gap between the floor and the bottom, birds, animals, insects, including rats and mice, easily and regularly enter the kitchen. The door issue is I don't think factually disputed. That sounds like more of a legal question, but on the rest of this, the magistrate who is sitting as a district court said there were disputes to fact and seemed to think that discovery was required. What's been the discovery that's been taken since this ruling about a year ago? We have been trying to get a hold of the actual food trays that the prisoners are served, and we've had one opportunity to actually look and weigh and measure the food trays, but that's a fight tooth and nail on getting access to it. Can you just give an overview of what's been done in the last year since this ruling in the district court in terms of depositions, experts, written document discovery, interrogatories, inspections? I would say that because of the state of this appeal, discovery didn't actually, and because of COVID and the lack of access into the jails, discovery did not really begin in earnest until October, that there are document production requests out from plaintiffs that were waiting for compliance from the defendants. We've had an opportunity to actually weigh and examine 42 trays, but we have not been able to get access to the variety of trays for the different diets that are out there. What's left in terms of discovery on these claims in your view? What's left? What more do you need to do in discovery? Well, I think one thing that we are awaiting to get from are what the defendants claim are their training protocols for training the inmates to wash the trays and to prepare the food trays. We have not gotten anything on what the training protocols are and what their enforcement mechanisms are. And in the meantime, we are regularly getting reports from prisoners that their food is insufficient, that they're shorted portions, that there is widespread hunger, and that the food is inedible in large. Is there a discovery deadline in the district court? The end of May, which I think is going to probably, I'm going to make a request for an extension because of the difficulty of getting access because of COVID and because of the security requirements of the jail. There's a class motion that was filed already? The class motion has been filed. The hearing on the class motion is tomorrow. Just to close out on the procedures, how about summary judgment briefing? Has that taken place yet? No, that has not. Is there a schedule for that? I think after close of discovery, that's somewhere down in the middle of summer if the discovery deadline is maintained. But what I wanted to say is that the shower curtain issue is important because it is based upon an unambiguous clear statute which requires that commercial food facilities be fully enclosed with permanent floors, doors, and walls. That's a state statute, correct? It's a state statute. So does the federal constitution require the jail to comply with state law? I think that what you have is that the state sets the health and safety code standards. And when there is an unambiguous clear mandate for how they're supposed to maintain that health and safety code standard, there is deference to the state statute. So the state statute sets the constitutional floor under the due process clause? Well, I think the standard is that prisoners are entitled to have food that is not contaminated by vermin and feces. And if the state mandates a process by which that is done, then there is no justification for ignoring the methodology in which it's being done. I think that that's what the issue is, is whether or not there is deliberate indifference when there's a state statute that says it is not enough to simply put traps on the outside. You have to have a permanent and permeable door that keeps insects and vermin out. Let's say there wasn't that state statute. Obviously, it's a hypothetical. Would you still have a due process claim that they have to put a solid door in there as opposed to whatever it is they have now? Well, I think the claim would be under Gray v. Hardy that if you're going to look at deliberate indifference in remedying this problem, that's simply because you do something such as pest control. So your answer is yes, you'd still have a due process claim? Yes. Even if there was no state statute? Because they didn't fix the problem. The problem is that animals, vermin, and insects are admitted into the jail and that the methods that they use don't keep them out. So it sounds to me like, if I could ask this a little differently, because I struggle with this as well, that there's some policies in place. And the state largely defended on the basis of the existence of policies, and your concern is not so much. Setting aside the door, it seems to me that your concern is more that they weren't complying with those policies as opposed to the policies being inadequate. Is that fair? Correct. Okay, so that's what the district court, I mean, that's what the trial court thought, too, right? That the problem really is she needed factual discovery about this. At one point in the hearing, I read the transcript, at one point he said maybe we should have a preliminary hearing and collapse that with the trial because she really needed to hear this testimony. It's about whether people were or were not complying with the policies about cleaning the trays and how they warmed the food and whatnot. Well, that's a separate issue from the doors. I understand it's a separate issue from the doors. As Judge Bress said, the door is sort of this legal question. I think that Judge Finerman's point seems to be very well taken about whether that being a state requirement and you're making a constitutional claim. But even at that, do you have some indication that the door, the flappy plastic door, failed in the inspection? Well, the inspection is completely silent on that. We don't even have any indication in the inspection report that she saw the flapping plastic. So I think the answer is you don't have an indication that it failed, the inspection, right? Well, the inspection didn't cover that issue. The answer is yes, we don't have that in this record, right? Well, I mean, the inspection report inspected what it inspected, but it did not inspect the door. Right, again, it goes to a factual question about what's really, the district court's hobbled here trying to figure out what is the status. There's a mountain of evidence, it seems to me, but it's really conflicting, and there's necessarily questions of fact about what's really happening. And putting this into three buckets, there's the door, and we don't have any indication that it failed its inspection. There's the food trays that you talked about a little while ago, trying to get access to those in discovery, and then there's questions about whether the food is inedible or contaminated, right? And there's real conflicting evidence on these points. You're here under, right, a preliminary injunction of abuse of discretion standard? Well, I don't believe there's conflicting evidence on the plastic. The issue is they've admitted that that's what they have. On the door? That they don't have a door, that what they have is plastic sheets hanging like a shower curtain. That's undisputed. Yes, I understand that, but your argument a minute ago in response to Judge Finerman's question really had to do with sort of what's wrong with that, and you said, well, there's a State statute that requires a certain, an enclosed area to prepare the food. Well, I think common sense tells you that if you have a shower curtain, it is neither permanent and it does not exclude animals because she found mouse feces in the kitchen. And so they're entering the kitchen, and the statute clearly says it's not enough to simply trap and kill. You have to exclude. That's what the statute says unambiguously, that it's exclusion that's required in a food preparation facility. Let me pick up on this line of discussion. If we can put aside the door for a minute because I think I know what you're asking there, you want a door. Correct. What else are you asking us to order here? The other issue is with regard to the insufficiency of the food. Right, but what is the relief you're asking? What do you want this court to do? I want the court to grant the preliminary injunction on the door and the fact that the jail should be required to meet its own menu in terms of what is on the food tray that is served to the prisoners. If there's going to, say, three ounces of carrots, there needs to be three ounces of carrots. If there's supposed to be 14 ounces of peanut butter and protein, there needs to be 14 ounces of peanut butter and protein. And the facts that we presented is unequivocal, which is not denied, that on many of the prepackaged issues that do not require scooping, it's simply a prepackaged, the carrots and the peanut butter, that prisoners were regularly shorted rations. And that's the key issue, that prisoners are complaining of hunger. So I think write the injunction. What would the preliminary injunction say? On the food tray issue, what would it say? Food trays need to contain the portions specified in the jail menu. Okay, how about for the food tray cleaning? What does the injunction say? So if I'm running the jail, I need to know what I need to do. The injunction is going to tell me what I need to do. What does it say? Food trays need to be cleaned of all debris and dirt and used food. Does it say follow your own policies? Is that what is boiling down, or are you attacking the adequacy of the policy? Well, I want to say that I don't know what the policy is on cleaning trays, but I think that the standard retail food code requires that food be served on clean platters. And I think that there's no one who's going to say that if you don't, you can't just take food, not rinse it, throw it in some soapy water, and then put clean food on it. Okay, so the record we have is, when I said a mountain of evidence, there's a lot of reports, I'm going to use that term loosely, in the record of people receiving trays that they say are dirty and caked with food and so forth. And then there's evidence that I don't hear you acknowledging that the district court had in the record about the process that's being used, allegedly, to clean the trays. What about that? That is disputed. That is disputed as to what the process is and whether the process is as acclaimed by the defendants, which we dispute. But if it's disputed, what order can we give? I mean, I think it may be disputed, and that's why there's a process in the district court to try to resolve this dispute, and we're not the fact finder, the district court is. And so that's why I continue to be confused as to what kind of relief we could grant here beyond the discovery that's already taking place. Well, I think that requiring a door is pretty simple and straightforward and is absolutely called for. On the issue of the trays, we requested an evidentiary hearing on that, which I think would be very straightforward. What is the process for cleaning the trays, having these people come in and testify? Simply for people to file the conclusory declarations that say, we cleaned the trays and we trained people to clean the trays, doesn't give you the basic evidence that the trays were cleaned. So could I interrupt you there because I think you just lied in something. You did ask for an evidentiary hearing and you didn't get one, and are you arguing that the court abuses discretion by not having an evidentiary hearing and relying instead on the written record? Is that your argument? It is because of the fact that hunger, that prisoners should not be required to endure the pain of hunger. It's a health and safety issue, and so rather than putting it off for the discovery. That's what I sort of gleaned from your briefing. That's correct. Okay, so we have the Thomas case. What other cases do we have that goes to that? As you know, we're really disinclined to interfere, that's my word, with how the district court runs operations in the trial court. During COVID, it's been particularly challenging, as you generously acknowledged. So why was it an abusive discretion for the district court to indicate, particularly because she indicated she may need to have a, fold the preliminary hearing into a trial on the merits because it's so fact-intensive. Why was that an abusive discretion? Well, because she found that there was no irreparable harm, and I think that the Northern District of California has held in a case in May, decided after the denial, that the pain, the physical pain of not having food, is in fact irreparable harm, and the Northern District has consistently held that suffering ongoing pain is irreparable harm. Didn't just find irreparable harm, though, right? She also said you need to find a showing of deliberate indifference, and she found not a likelihood of success on the merits of that, given these policies that were in place. Do you want to speak to that? Well, you may have a policy that says we're supposed to feed people and we're supposed to give them 14 ounces of peanut butter, but if you have a practice that does not do that, so that people who are in your custody and incarcerated in your facility are regularly hungry, then what you're doing is deliberate indifference. Let me agree with you on that point. But the district court didn't get that far yet. She didn't have evidence to make the finding of fact that, in fact, the trays are dirty and, in fact, people are hungry. So what should she have done? What do we have that we can say that the process here is an abuse of discretion in getting to the factual discovery? The abuse of discretion is the fact that she considered it disputed facts, when the undisputed facts is that on the prepackaged foods people were regularly shorted. The only evidence offered by the defendants is that they used scoops, so there couldn't have been shortages. But we presented evidence that says when it's prepackaged foods, they were shorted of the prepackaged foods. Therefore, there's no fact dispute. They did not get the prepackaged foods that are on the menu. You mean no conflicting evidence? Right. Okay. That's correct. I'm going to stop you there, and thank you for your patience with our questions. We'll put two minutes on the clock when you come back. I'm not sure which of you're splitting your time. All right. I'll take the first. May I please the court? Jonathan Belago on behalf of the county defendants. I want to say at the outset that the food portion discussion that was had with appellants' counsel, that's not at issue in this litigation. It wasn't at issue at the time of the preliminary injunction order came in. That's my understanding as well, but we do have concerns about the door and the cleanliness of the food trays and the food being contaminated. So could you focus on those issues, please? So there is no statute that requires a door, period. End of discussion on that. Appellants have not cited a statute, and the lower court determined that the statute didn't say that. Appellants want this court to substitute its judgment for that of the people who enforced that law. Could you just explain why there isn't a solid door? So there are robots that come in and out of the kitchen while the food is being prepared. They can't open a solid door. They pick up the buckhorns, which are the parts, the insulated parts in which the food is put, and take them to the housing units of the jail. So in order to be able to enter a doorway, the doors have to be open. There are solid doors, actually, on this area. I mean, we've given, to go to the prior question on discovery, appellants have had hours, more than eight hours in the kitchen, to be able to make this determination, whether they took pictures of it or not. Can I back up on this to make sure I understand it? Because, you know, to put this in a context, it seems to me, if our opposing counsel were here, and I want to give you a chance to respond, that there's this plastic, you know, the strips are hanging down because this is all being done on an automated basis, and it's being done on an automated basis as a cost-saving mechanism. So when you say the robots have to do it this way, the alternative would be to hire a human being to open and close the doors, and that's a different decision than the one that has been made here. Isn't that fair? Well, so one of the doors that we're talking about is specifically, the robots don't come in and out the kitchen in that door, but the inmate workers do take the buckhorns out that door. And so for that reason, two big, heavy steel doors are propped open. All right, so Judge Fineman's question was, why are we relying on this plastic sheeting? And it seems to me the plastic sheeting, you know, those aren't trick questions. It just seems to me the decision's been made to do this on an automated basis as a cost-saving measure. Isn't that why the doors are usually propped open and the plastic's hanging down? It's not just a convenience factor. We have an operating commercial kitchen that prepares tens of thousands of meals per day,  and if it weren't robots, there would still be workers going in and out. How is it otherwise sealed? Because the impression one could get from reading some of the briefs is that it's just sort of this plastic sheeting that's been just opened to the outside air. But is that accurate? There are roll-up doors on those walls. They're open during business hours. During operating hours. What does the record show about when it's not operating? The roll-down doors are put back down? I can't speak to that, and there is nothing in the record on that. I mean, if we were to put doors in there, they would still be open during the operating hours, which is when everything is. To accommodate the robots, yes. Right. But, again, I want to get back to there is no requirement in the statute anywhere to say that a permanent door is required. Do you have another door question? I have another door question. The statute is something of a red herring because, at the end of the day, the question is not what the statute says but what the Constitution requires, and I think opposing counsel's argument is essentially that the Constitution requires a kitchen that is clean and that's not contaminated with pests. And so I guess that's the question, how we go about figuring out whether this meets that standard or doesn't meet that standard. I just don't know that the record is established one way or the other. I think the record is perfectly clear on that, Your Honor. We have neutral inspectors, and we've presented their reports basically saying that the kitchen is clean, but they have not been able to verify these types of issues. I don't know what else the court would do if it were going to grant the relief plaintiffs are seeking, but, I mean, if I take a moment, this is Mike Brady. He says, as he's inspecting the main kitchen, this is a – I don't remember the record number, but it's page 7 of his report. As I stated earlier in this report, on this inspection, the kitchen was clean. Proper cleaning protocols were in place. The equipment was maintained properly, and a dry storage area was needed. We know that. What I mean by the record is not established is that the facts haven't been found by a fact finder. And so you have your version of the facts, and I just don't think there's been a resolution of this question yet. And that was sort of where I began by asking, how is it going in the district court to try to get clarity and then hopefully eventually closure on these issues? Well, as I was saying earlier, we have given plaintiffs ample opportunity to inspect. We've invited them into the kitchen. They said they don't even have the protocols. Is that right? I don't think that's true. No, we've given them everything that they've asked for. We're not going to resolve a discovery dispute. I guess we're not going to resolve a discovery dispute, but apparently you don't have agreement on that. Is there anything further about the door? No. Can we move on to the trays? Are you the person or is the co-counsel going to talk about the trays? I can speak to the trays, but my colleague from Aramarkus, from my co-defendant, is going to speak more to the trays. But I will tell you that, again, we've allowed plaintiffs to inspect the cleaning process for the trays. They had hours in the kitchen watching the trays go through a cleansing and sanitation process. They took pictures. They've never been shy about producing evidence that was not on the record at the time that they filed their motion in reply. And if they had any evidence, they would have produced it in their reply to the appellate brief, just as they've done multiple times on reply in the lower court. I don't think that they have any evidence to support it. I'm really not certain why we're still having argument on this. We're giving them access to everything that they need to see. Well, when you say they don't have any evidence, they clearly do. I don't know what happens between the robots taking the trays and people receiving the trays. But the conundrum in the trial court is that there's a whole lot of declarations of people claiming that they're receiving very soiled trays, as you know. Right? Well, I mean, they're making those declarations. But, again, if plaintiffs or appellants have seen the trays in the cleaning process, they come out clean. And currently we're using disposable trays. I'm only responding to your statement that there was no evidence. And currently we're using disposable trays for what it's worth. Thank you, counsel. I think your co-counsel is ready to begin her argument. Okay. And I would just say that there's no grounds for overturning the lower court in this. And I would turn it over to my co-counsel. Thank you. So you're the food and the tray person? Good morning, Your Honor. Yes. Saleha Ghori for Aramark Correctional Services. With respect to the issue of the food trays, as my colleague, Mr. Balaga, just stated to the court, the trays in service currently no longer are the plastic trays that are being discussed in the briefing. Currently, the county is using reusable trays, and therefore those trays are discarded. So now you're stating something that's outside the record? Yes, Your Honor. It's your equal opportunity in stating stuff that's outside the record. I'll give you that. But we really can't consider that, counsel, as you know. Yes, Your Honor. So could you stay with the record that we've got? Absolutely, Your Honor. With respect to the policies in terms of cleaning the plastic trays that were at issue, there is declaration submitted by Aramark with respect to the policies that were in place. Those required the taking of the tray, putting them into a soapy water . . . We've read that. Forgive me for interrupting, but we've read that a lot of times. This briefing was thorough on that point, and I think it's why the district court at one point in the transcript that I read said, stop saying that. Because she's just had . . . and I don't think it was to your team, actually, but she just had conflicting evidence on this point. And I think opposing counsel's point is very well taken. Policies aren't enough, right? So the question is, are they complying with the policies? She's got different problems. She apparently doesn't even have the policies, or there's a dispute about that. But could you go to this other point that I'm trying to get at, which I think you're here on a preliminary injunction that was denied. Yes? Yes, Your Honor. It's an abuse of discretion standard. Yes. The evidence is . . . I just see on my scorecard, the evidence seems to be conflicting sharply about whether people are receiving dirty trays. Your team says, here's the process we have to clean the trays, and then there's a lot of inmates saying, I'm getting really dirty trays. Is that a fair summary? Your Honor, I think that there are statements from both sides. And we have the plaintiff's declarations, and we have declarations from Aramark and the county. I think what's important for the court to consider is the third-party neutral evaluations and inspections that are performed. We had an individual from Alameda County Department of Environmental Health come in and inspect the processes and policies that are implemented by Aramark to determine whether or not the trays were cleaned appropriately. That individual filed a declaration in support of our preliminary injunction, the opposition to the preliminary injunction, indicating that those trays were, in fact, clean. Additionally, there have been further independent inspections by third-party neutral Mr. Brady. He has performed various inspections, Your Honor, which also indicate that the kitchen is one of the cleaner facilities that he has encountered. Therefore . . . So disputes of fact. Yes, yes, yes. Disputes of fact, yes, Your Honor. And so what happens? For purposes of what we have before us. Yes, Your Honor, in terms of . . . We think that in terms of whether or not there was a showing by the plaintiffs that there's a deliberate indifference to provide unclean trays, there's a failure to show that, Your Honor. The evidence that was submitted by the plaintiffs was refuted not only by the county and Aramark, but also by third-party independent neutrals. Therefore, we think that plaintiffs have failed to show a deliberate indifference with respect to the cleanliness of the trays. Out of all the people you mentioned, a number of witnesses, have they been deposed? No, Your Honor. No, Your Honor. Why not? Your Honor, we have served discovery in this case. Depositions have been proceeding in a related matter, but no depositions have taken place in this case. Judge Bress's question was, why not? Your Honor, that is a question that I unfortunately don't have an answer for you, Your Honor. It is something we have served a discovery. As soon as we get the responses from counsel, we intend to notice depositions of the plaintiffs in this case. So when a district judge gets a preliminary injunction motion, there has to be some factual evaluation by the district judge. And here it seems that the district judge made the factual evaluation based on a written record only. Is that correct? Yes, Your Honor. Okay, so one question I have is, given the conflicts in the declarations, was the district judge obligated as a procedural matter to have an evidentiary hearing with live witnesses in order to resolve the conflicting written evidence? No, Your Honor. We don't think that there was an obligation to have an evidentiary hearing. The lack of discovery in this case, the lack of the plaintiff's ability to show a likelihood of success on the merits, all warranted a proper ruling by the court to not have an evidentiary hearing. Well, the district court's finding, though, it seems to me the bottom line was that there was a failure to show likelihood of success and deliberate indifference because of the existence of policies. So going back to Judge Feinman's question, if you accept my earlier comment, I really question whether the existence of policies would be sufficient if the policies aren't being complied with. So was there a need for an evidentiary hearing? It's a health and safety issue that's affecting many, many hundreds of people, right? Your Honor, if I understand your question correctly, you're asking whether or not the court should have had an evidentiary hearing to determine whether or not Aramark was instituting its policies? Lying with its policies, right. Your Honor, I think, again, the answer to that question is no. I think the court had before it information and reports by third-party neutrals indicating that the policies were being— But now you're doing the same thing. You're saying, no, she was required to give credence to your evidence. Our premise here is there's conflicting evidence. There are people claiming to be receiving soiled trays. And going back to Judge Feinman's question, if there's conflicting evidence in the record, and I'll tell you, on my scorecard, it sure looks conflicting to me. So was there a need to have an evidentiary hearing? No, Your Honor. Again, we submit that there was no need to have an evidentiary hearing. Your Honor, on a scale of the amount of trays of food that are delivered to the plaintiffs, there's at least, I believe it was, the number is 16,000 meals per day, 365 days a year, and it's five years of the proposed class period. The proposed class includes 115,000 plaintiffs. I'm trying to get to your point. My point is, Your Honor, that the— The fact that it's a very large-scale operation concerns me more, not less. It's lots of people who are going to be affected by this. So what am I missing here? Your Honor, the reason I bring that before the court is because the plaintiffs have submitted only a handful of grievances or declarations on behalf of these plaintiffs. When we're looking at this, at the amount of trays that are being sent out to the prisoners, my point is that this does not rise to deliberate indifference. Is that what the judge found? Your Honor, it's what we're arguing here today. So go back to what the judge found. The judge decided that there wasn't a likelihood of showing a success on the merits, I think, because of the existence of policy. Should I be concerned about that? No, Your Honor. We don't think you should. Because? Because, Your Honor, the evidence submitted by the plaintiffs was refuted and was shown that those policies were being implemented. Okay. Thank you. Anything further? Nothing further, it sounds like. Thank you, counsel. Thank you, Your Honor. Thank you, Your Honor. I wanted to respond to one comment with regard to the question of whether or not the statute rises to a constitutional standard. And I want to cite Gray v. Hardy, which is 826 Fed Third 1000, the Seventh Circuit. And the Seventh Circuit held that where the prisoners were complaining about pests, birds, and insects in their facility, the warden and the prison officials were not relieved of liability, even though they had pest extermination methods, because those efforts were ultimately futile, because the problem was that they had broken windows that allowed birds and insects to enter in the first place. And I think that that's a parallel situation that we have here, that I don't know what the statute says in the Seventh Circuit, but we have clearly a problem in which you have an opening in the wall in which animals and insects are coming in. And simply because you have extermination methods does not mean that you have resolved the problem, because you're constantly having influx in that changes depending upon the seasons. You know, when they're fertile and breeding in the spring, you get more. So I think that as a constitutional basis, that it is required that when you take an action on something that is health and safety, that it actually addresses the fundamental problem. And in this situation, it is the plastic sheeting instead of a door. On the question of whether or not there was an abuse of discretion in not having the evidentiary hearing, we cited Arrowpoint Capital v. Arrowpoint Asset Management. That's a Third Circuit case, which held that when the district court rejects submitted affidavits and there is a conflict in the evidence, failure to hold an evidentiary hearing amounted to error. So in this situation, it seems clear to me that the district court is rejecting the submitted affidavits that plaintiffs have produced and then refused to hold the evidentiary hearing, and that amounts to error. So regardless of the fact that there is a conflict, what the district court should have done is grant plaintiffs' requests for an evidentiary hearing to decide whether or not Aramark and the jail were complying with their policies, whether in fact they were following through with the training and requiring the sanitation which is necessary, which I think no one will deny you need to have clean food trays. But the plaintiff didn't ask for an evidentiary hearing until after the oral argument on the preliminary injunction motion. Is that right? We asked for it at the oral argument, and then we filed a formal request for oral argument. Why didn't you ask for it beforehand? We did not ask for it at the time of filing. And in terms of Mr. Brady, the reason why we did not take Mr. Brady's deposition is Mr. Brady is deceased. So it was not possible to take it. Okay. Well, I'll give you that one. But why not, if you saw that there were conflicting affidavits, why not say to the judge before the argument on the preliminary injunction hearing, hey, there are conflicting affidavits. I think it might be hard for you to resolve fact disputes based on a written record. We need to bring people in for you to evaluate their credibility in person. You know, it's just in the press of litigation. It just didn't occur to me, and it occurred to me at that time, and I accept that criticism and will do better next time. I wasn't intending that as a critique. I was just trying to figure out how things played out. It was just a coordination of all the evidence we were producing from all these people who are in custody that we had difficulty accessing. So I was just trying to get that information before the court from the people who are experiencing these problems. Have you requested protocols and not received them in discovery? Is your position that you requested the cleaning protocols and not received them in discovery? Correct. All right. Anything further? No. All right. Thank you all for your argument.  Thank you. That's the last argument on the calendar. We'll submit these cases and stand in recess for the day. Thank you. Thank you.
judges: CHRISTEN, BRESS, Feinerman